UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

UNITED STATES OF AMERICA

                    - v. -

JOSE ANGEL QUILESTORRES,
        a/k/a "Carlos Jose,"

                 Defendant.

12 Cr. 794 (RJS)
13 Cr. 945 (RJS)

-----------------------------------------------------------------------X


**SENTENCING MEMORANDUM OF THE UNITED STATES OF AMERICA**


PREET BHARARA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007


RAHUL MUKHI
MICAH SMITH
Assistant United States Attorneys
    - Of Counsel -

## PRELIMINARY STATEMENT

The defendant in this case, JOSE ANGEL QUILESTORRES, a/k/a "Carlos Jose," is scheduled to be sentenced on March 21, 2014 at 2:00 p.m.  The Government respectfully submits this memorandum in advance of that sentencing and in response to the defendant's sentencing submission, dated February 25, 2014.

The defendant was the leader of massive conspiracies to defraud the United States and the Internal Revenue Service ("IRS") by submitting fraudulent tax refund claims under the stolen identities of Puerto Rican residents (known as stolen identity refund fraud or "SIRF").  Through this SIRF scheme, the defendant stole a staggering amount of more than $10,000,000 from the public fisc.

For the reasons set forth below, the Government respectfully requests that Court calculate a Guidelines range of 94 to 111 months and impose a sentence within that range, as such a sentence would be an appropriate punishment under the factors set forth in 18 U.S.C. § 3553(a). The Government also requests that the Court impose restitution and forfeiture both in the amount of $10,139,452.11.

## BACKGROUND

### I.      The Offense Conduct

The defendant was a leader in a nationwide and prevalent scheme to defraud the U.S. Government by submitting false tax refund claims under the stolen identities of Puerto Rican residents.  (PSR ¶¶ 22-25).  The SIRF scheme exploits the fact that Puerto Rican residents have U.S. social security numbers ("SSNs") but do not file income tax returns with the IRS unless they move to the continental United States.  The perpetrators of the fraud steal Puerto Rican identities, submit IRS claims for tax refunds using the stolen information, and then intercept the

tax refund checks using controlled physical addresses and/or corrupt mail carriers. The checks are deposited, cashed, and the funds are disbursed among the conspiracy members.

This particular type of fraud on the IRS, using stolen identities of Puerto Rican residents to claim refunds from the IRS, is a nationwide epidemic. *See generally* http://www.justice.gov/tax/Stolen_Identity_Refund_Fraud.htm. Indeed, this particular fraud results in over *a billion dollar in losses* annually to the U.S. Treasury. *Id; see also* Reed Albergotti, *Billions Lost in Tax-Refund Scam*, Wall Street Journal, Mar. 30, 2012. The Government is actively seeking to dismantle SIRF networks, but the problem persists. In Fiscal Year 2012, the IRS initiated approximately 900 identity theft related criminal investigations, tripling the number of investigations initiated in FY 2011. *See* http://www.irs.gov/uac/Newsroom/IRS-Criminal-Investigation-Targets-Identity-Theft-Refund-Fraud-2013.

The epicenter of the scheme in this case was a fraud mill operated by the defendant. (PSR ¶¶ 26-30). To file the fraudulent returns, the defendant and his criminal partners would unlawfully obtain identifying information, including names, dates of birth, and SSNs of Puerto Rican citizens. Their stolen identities would then be used to electronically file income tax returns with the IRS in which they claimed they were owed large refunds from the federal government. The defendant is believed to have directed the resulting tax refund checks to addresses he controlled, or along specific mail routes assigned to U.S. Postal Service employees who had been bribed to pull the checks from the mail. Many of the checks in this particular scheme were sent to addresses in Shirley, New York, where a Postal Service employee was charged with stealing United States mail containing tax refund checks. The checks generated by the returns filed by the defendant were then cashed by other individuals. (PSR ¶ 25). The

defendant used check cashers and addresses located in both the Southern District of New York as well as in the District of New Jersey.

On or about September 12, 2012, Complaint 12 Mag. 2386 (the "*Quilestorres, et al.* Complaint") was filed under seal in this District charging the defendant, Miguel Caceres, Felipe Duran Martinez, Ana Pimentel, and Emil Mejia. Caceras, Martinez, Pimentel, and Mejia were all check cashers who cashed refund checks in the Southern District of New York that were generated from the defendant's fraud mill. A separate complaint was filed in the District of New Jersey charging the defendant with similar but separate crimes in that District. On the morning of September 19, 2012, agents of the United States Postal Inspection Service ("USPIS") and IRS went to the defendant's residence in order to execute the arrest of the defendant and to a execute search warrant. (PSR ¶ 24). When executing the search warrant, agents found, among other things, lists of Puerto Rican identities used in submitting federal tax returns. (PSR¶ 24). The agents also discovered that the defendant was being aided by one of his roommates, Jairo Polanco.

An analysis of the IRS claims submitted by the defendant and his co-conspirators in New York and New Jersey determined that, over the course of the conspiracies, the defendant stole $10,139,452.11 from the United States treasury. This was an epic fraud by any measure.

## II.    The Guilty Plea And Guidelines Calculation

On May 2, 2013, the defendant pleaded guilty before the Court to the five counts contained in the Indictment 12 Cr. 794 (RJS), to wit, violations of 18 U.S.C. § 371 (conspiracy to steal Government funds), 18 U.S.C. § 641 (theft of Government funds), 18 U.S.C. § 1028A ("1028A") (aggravated identity theft), 18 U.S.C § 286 (conspiracy to submit false claims to the United States), and 18 U.S.C. § 287 (filing false claims). On November 12, 2013, the defendant

pleaded guilty before the United States District Court for the District New Jersey for related conduct that he committed in that venue as alleged in a three-count information charging violations of 18 U.S.C. §§ 371, 641, and 1028A.  As the Court is aware, the case in the District of New Jersey was transferred to this District for purposes of sentencing.  13 Cr. 945 (RJS).

The Government, the defense, and the Probation Office all agree that the recommended sentence under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") is 70 to 87 months plus 24 months for at least one of the defendant's violations of 1028A.  This calculation includes a total loss amount of between $7,000,000 and $20,000,000 and an offense level enhancement based on the defendant's role as a leader and organizer of the conspiracies at issue. (PSR ¶¶ 46, 48).  As the parties agreed in the plea agreement in 12 Cr. 794 (RJS), this results in a total Guidelines range of 94 to 111 months if the Court imposes the mandatory 24-month sentence on only one 1028A count consecutively to the other counts of conviction.  (As the Court is aware, the Court *must* impose one 1028A count consecutively under the statute.)

As indicated in the presentence report ("PSR"), if the Court were to impose the sentences for *both* 1028A counts consecutively to the sentences imposed on the other counts, this would result in a Guidelines range of 118 to 135 months.  (PSR ¶ 86).  The Probation Office recommends a sentence of 118 months.

With respect multiple counts under 18 U.S.C. § 1028A, the Guidelines recommend in U.S.S.G. § 5G1.2, Application Note 2(B), the following:

> In determining whether multiple counts of 18 U.S.C. § 1028A should run concurrently with, or consecutively to, each other, the court should consider the following non-exhaustive list of factors:
>
> (i)  The nature and seriousness of the underlying offenses.  For example, the court should consider the appropriateness of imposing consecutive, or partially consecutive, terms of imprisonment for multiple counts of 18 U.S.C. § 1028A in a case

4

in which an underlying offense for one of the 18 U.S.C. § 1028A offenses is a crime of violence or an offense enumerated in 18 U.S.C. § 2332b(g)(5)(B).

(ii)  Whether the underlying offenses are groupable under §3D1.2 (Groups of Closely Related Counts).  Generally, multiple counts of 18 U.S.C. § 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under §3D1.2.

(iii)  Whether the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence for multiple counts of 18 U.S.C. § 1028A.

Under these factors, the Government respectfully submits that only 1028A count should be run consecutively and the Court should calculate a Guidelines range of 94 to 111 months and impose a sentence within that range.

## ARGUMENT

### I.    Sentencing Principles

The Guidelines still provide strong guidance to the Court following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Although *Booker* held that the Guidelines are no longer mandatory, it also held that the Guidelines remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing.  *Booker*, 543 U.S. at 264.  As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" — that "should be the starting point and the initial benchmark."  *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, however, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a):  "the nature and circumstances of the offense and the history and characteristics of the defendant,"  18 U.S.C. § 3553(a)(1); the four legitimate

purposes of sentencing, as set forth below, *see id.* § 3553(a)(2); "the kinds of sentences available," *id.* § 3553(a)(3); the Guidelines range itself, *see id.* § 3553(a)(4); any relevant policy statement by the Sentencing Commission, *see id.* § 3553(a)(5); "the need to avoid unwarranted sentence disparities among defendants," *id.* § 3553(a)(6); and "the need to provide restitution to any victims," *id.* § 3553(a)(7).  *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

## II.    Application of the Section 3553(a) Factors

A Guidelines sentence would reflect "the seriousness of the offense" and the need to "afford adequate deterrence" and "to promote respect for the law."  18 U.S.C. § 3553(a)(2).

With respect to "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), the defendant knowingly and willfully participated in a scheme to defraud the United States by stealing U.S. treasury funds.  In this manner, this defendant stole more than $10,000,000 dollars from the public fisc.  Such a brazen crime no doubt calls for a significant punishment.

At the sentencing of Jairo Polanco, the Court recognized the damage that this crime causes society:

> This is a serious crime.  This is, you know, defrauding the
> government of money that could be used for other things; to help
> feed poor people or to make sure that there are more school
> teachers, or to make sure that things like the Federal Defenders
> program, which is now facing budget cuts, wouldn't be cut so
> much.  So the fraud, every dollar taken from the IRS wrongfully,
> fraudulently is a dollar that could be used in another way.  And so
> this is a serious crime and the sentence imposed has to reflect that.
> . . .
>
> And your crime the crime you participated in I think contributed to
> a cynicism that's not healthy, undermines people's confidence in
> their government, undermines people's respect for their
> government.

July 24, 2013 Tr. at 24, 43.

On top this, the defendant, as he concedes, was a leader and organizer of this destructive

scheme.  The defendant is therefore more culpable than the defendants the Court has sentenced

thus far, Jairo Polanco and Miguel Caceres, who received sentences of 12 months and one day

and 14 months, respectively.  Not only does the defendant's willingness to lead and organize a

criminal venture impact his Guidelines range, the Court should also consider this fact under

Section 3553(a) because it increases the seriousness of the defendant's offense.

A Guidelines sentence would also account for the need to deter the defendant and others

from participating in such fraud.  The defendant and his cohorts used what is, unfortunately, a

common fraud that victimizes the IRS and United States taxpayers.  Given the nationwide, even

international, scope of this scheme, it is a crime that sorely calls out for a substantial sentence to

generally deter others from breaking the law in the same manner.  This concern is far from

abstract in a case like this, in which a significant sentence will send a direct message to the many

others who continue to engage in these schemes.  While the Government has been taking

numerous steps to prevent the fraud from being so successful in its current form,[1] at the same

---

[1]        *See e.g.*, The Economist, *SIRF's up*, Nov. 30, 2013 *available at*

time individuals must be deterred from continuing the conduct and inventing new ways to undercut preventative measures.

While the defendant cites his personal history and characteristics as mitigating factors, they do not appear to distinguish him from many other defendants who appear before the Court. Even taking these factors into account, a Guidelines sentence of 94 to 111 months' would appropriately reflect the seriousness of the offense and the need for deterrence and respect for the law.  Any fraud involving $10,000,000 would be worthy of significant punishment.  The Government respectfully submits that the fact that the defendant's crime was part of a systematic attack on U.S. taxpayers makes it even more deserving of a sentence that includes substantial incarceration.

---

*http://www.economist.com/news/united-states/21590912-cleverer-use-data-and-investigative-collaboration-can-help-cut-fraud-sirfs-up* ("[The IRS] has doubled the number of employees working full-time on ID theft to 3,000, even as its budget has been cut.  This has helped reduce the average time it takes to resolve cases from ten months to four, and has raised the amount of fake refunds that are blocked before being sent out to $20 billion in the 2012 tax cycle, from $14 billion the year before.  The IRS could cut losses further if it were able to delay posting refund cheques until it had time to cross-check them against income data from employers, which it receives weeks later.  But that would require an act of Congress, and there is little political support for making people wait longer for their money.").

**CONCLUSION**

For the foregoing reasons, a Guidelines sentence of 94 to 111 months would be sufficient, but not greater than necessary, to achieve the legitimate purposes of sentencing.  The Government also requests that the Court impose restitution and forfeiture both in the amount of $10,139,452.11.

Dated:  New York, New York
        March 4, 2014

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States
                                        of America

                        By:    _Rahul Mukhi_____
                                RAHUL MUKHI/MICAH SMITH
                                Assistant United States Attorneys
                                (212) 637-1581/2439

9